Ervin NOLL, Plaintiff–Appellant,

v.

SHELTER INSURANCE COMPANIES, Defendant–Respondent.

No. 71371.

Supreme Court of Missouri, En Banc.

Aug. 1, 1989.

**148**

BLACKMAR, Chief Justice.

This attenuated controversy involves important problems of trial and appellate practice which may arise when there are successive appeals in the same court-tried case.

The plaintiff was severely injured in an automobile accident on April 15, 1980, in a collision with a car driven by Leonard Scott Stark (Scott) and owned by a friend. Scott did not have insurance. His father, Leonard Stark, carried separate insurance policies issued by the respondent's predecessor on two vehicles he owned, each with liability limits of $100,000.

The plaintiff sued Scott in Jefferson County. The respondent insurer refused to defend the suit and judgment was entered, apparently without resistance, for $250,-000. The plaintiff then brought the present action against the respondent, styled "equitable garnishment," in two counts, alleging that Scott was an insured under the two policies issued to his father.[1] The insurer filed an answer denying Scott's status as an insured. Nothing with regard to the "anti-stacking" provisions was pleaded. The case was tried to the court without a jury in a full evidentiary hearing. The insurer's post-hearing memorandum mentioned the stacking question but the trial court had no occasion to rule on the issue because it held for the defendant insurer, denying the plaintiff any relief.[2]

The plaintiff contended on appeal that the trial court erred in concluding that the policies issued to Leonard did not provide coverage for Scott as an insured. The insurer's brief raised two points, one suggesting that the trial court did not err in concluding that the policies did not extend coverage, and the second arguing that the policies met the insured's reasonable expectations. The defendant did not argue on appeal that whatever coverage existed was

Donald L. Schlapprizzi, Margaret M. Neill, and Gary A. Growe, St. Louis, for plaintiff-appellant.

Denis C. Burns and Eric P. Rosenkoetter, St. Louis, and Ray Dickhaner, Hillsboro, for defendant-respondent.

1. Count I sought, in addition, penalties and attorneys' fees. Count II named an additional defendant and sought judgment for $225,000 plus interest.

2. The court of appeals properly received this memorandum as a part of the record on appeal, because it demonstrated the issues presented to the trial court and rebutted any claim that the defendant did not present the issue until remand. Rule 81.12(b) authorizes this supplementation of the record.

subject to anti-stacking provisions contained in each policy.

The court of appeals concluded that Scott "is an insured operator under both of Leonard Stark's policies." *Noll v. Shelter Insurance Companies,* 731 S.W.2d 393, 395 (Mo.App.1987). The opinion concluded, "the judgment is reversed." The insurer filed post-hearing motions for rehearing or transfer, which were overruled, and then sought transfer in this Court.

The record does not show a formal entry of judgment in the circuit court following the spreading of the mandate of the first appeal. The plaintiff, rather, sought a writ of "garnishment sequestration/levy" seeking to reach the insurer's funds for application to the plaintiff's claim. The insurer paid $100,000 plus interest on that sum, representing the policy limits of each policy, but declined to pay the additional $100,000, adducing an anti-stacking provision common to both policies reading as follows:

No. 5. *Other Automobile Insurance in the Company*—With respect to any occurrence, accident, death, or loss to which this and any other automobile insurance policy issued to the named insured or spouse by the company also applies, the total limit of the Company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy.

The trial court again agreed with the insurer and sustained a motion to quash the garnishment process. The plaintiff again appealed and the court of appeals again reversed, finding that the insurer was undertaking a "collateral attack" on the prior judgment, barred under principles of res judicata. It found no occasion to consider the merits. We granted transfer because of the important procedural issues in the case, and now affirm the judgment of the circuit court.

## I. The Procedural Issue

■ The plaintiff argues that the insurer is barred from asserting a "defense" based on the anti-stacking provisions of the policies because the issue was not raised in the briefing of the first appeal.

■ The plaintiff's action, though styled "equitable garnishment," was a suit for monetary recovery rather than a garnishment process ancillary to the tort claim. *See* § 379.200, RSMo 1986. Whatever the procedure, however, recovery may only be had in accordance with the terms of the policies. It is not necessary to plead as affirmative defenses policy provisions defining the coverage. Rule 55.08.

The trial court initially found that Scott was not an insured within the terms of the policies, and that the plaintiff was therefore entitled to nothing. This finding disposed of the entire case. The court might have made a conditional ruling on the anti-stacking provision referred to in the defendant-insurer's memorandum, but was not obliged to do so. There could be efficiency in such conditional rulings in court-tried cases because the whole case may often be fully disposed of with one appeal even if error is found, but such rulings may require extra time and effort and the trial judge may exercise discretion as to the scope of his findings and conclusions so long as the issues supporting the judgment rendered are disposed of.

Neither party mentioned the matter of stacking in the briefs in the court of appeals. The plaintiff argued that the trial court erred in finding that Scott was an insured and concluding that the policies did not provide coverage for his liability. The insurer responded to these points but did not include an alternative point arguing in effect that, even if the judgment were in error, the plaintiff could recover only the policy limit of one policy.

■ Contrary to the plaintiff's suggestion, the defendant could not have cross-appealed from the failure of the trial court to rule the stacking point. It was not aggrieved by the judgment wholly in its favor and lacked standing to appeal.[3] It could have included the alternative point just de-

---

3. Section 512.020, RSMo 1986; *Grippe v. Momtazee,* 696 S.W.2d 797, 798 (Mo. banc 1985); *Page v. Hamilton,* 329 S.W.2d 758, 762 (Mo. 1959).

scribed, seeking to limit the plaintiff's recovery in the event of reversal. We do not believe, however, that it would be fair to hold that the insurer waived its right to argue about the maximum amount of recovery when it failed to include the stacking issue in its brief. The respondent's responsibility, essentially, is to support the judgment. Neither the language of the rules nor any case law we are aware of compels the inclusion in the respondent's brief of alternative or conditional points not raised by the appellant.

■ The court of appeals on the first appeal simply mandated that the judgment be "reversed." It did not exercise its authority under Rule 84.14 to "give such judgment as the court ought to give."[4] Nor did it make the calculations necessary to "dispose finally of the case." The opinion made no mention of the stacking point. It gave no express directions as to the judgment to be entered on remand.

■ The insurer called the court of appeals' attention to the stacking problem in its motion for rehearing or transfer. The motions were summarily denied, as are the great bulk of post-opinion motions. The court of appeals was justified in overruling the motions without considering an issue not briefed and not covered in its opinion. This does not constitute a ruling on such an issue.

The insurer's application for transfer in this Court raised, among other issues, the failure to dispose of the stacking issue. This application was summarily denied. The denial does not constitute a ruling on any issue in the case and does not foreclose consideration of the stacking issue. It simply shows that a majority of the judges of this Court found no reason such as importance, conflict, or need for reexamination of the law, by reason of which this Court should assume jurisdiction. Mo. Const., Art. V, § 10; Rule 83.03.

■ The circuit court, on remand, had the authority to enter a judgment consist-

ent with the opinion and the mandate. This connotes the power to make all necessary rulings on undisposed points.

The plaintiff argues about the "judgment" of the court of appeals as though it were a final judgment in the case on which an execution or garnishment could be sued out. Its citation is to the opinion of the court of appeals, which simply directs that the judgment be "reversed," without specifying the amount of the judgment which should be entered for the plaintiff. The opinion could not be construed as a direction to enter judgment for the plaintiff for all relief sought in the petition, because claims in addition to those now urged were made there. *See* note 1, *supra.* The only other document emanating from the court of appeals is the mandate, which is simply a transmittal of the opinion.

So far as the record brought to us shows, no judgment was ever entered in circuit court pursuant to the opinion and mandate of the court of appeals. There is no showing that there was a final judgment of the circuit court which could serve as basis for execution or garnishment process. Thus the allegations of "collateral attack" are misplaced. Because no judgment was ever entered there is an apparent problem of finality for purposes of appeal. It is the plaintiff's burden and responsibility to make sure that there is a final judgment which will support execution, and to apply for appropriate orders.

It appears, however, that the insurer paid what it conceded to be due and that the trial court denied the plaintiff further recovery. The plaintiff may properly take an appeal from this denial, which has the hallmark of a final disposition. The appeal, then, is ripe for our determination of the merits.

We have given careful attention to the plaintiff's citations. Our task would have been easier if the defendant-insurer had favored us with comment on them. The cases, however, are distinguishable.

---

**4.** In spite of the authority conferred by this rule, it appears to be the practice of Missouri appellate courts not to render judgments, but rather to remand cases with directions as to the judgment to be entered by the trial court.

In *McIntosh v. Wiggins*, 204 S.W.2d 770 (Mo.1947), this Court, had reversed an earlier judgment on a prior appeal giving precise directions as to the decree to be entered on remand. The losing party then took an appeal from the judgment of the circuit court entered pursuant to the mandate, asserting that a prior judgment on which this Court had relied, was "void." We held that the only proper question was that of conformity of the new judgment to this Court's mandate, and that an allegedly erroneous judgment is not void. The case differs from this one in that, here the court of appeals on initial submission did not explicate the details of the judgment to be entered on remand.

In *Autenrieth v. Bartley*, 176 S.W.2d 546 (Mo.App.1943), the plaintiff had brought a quiet title suit in which he was unsuccessful. He then sought to establish an easement over the same property. The court held that he should have included all his claims to the property involved in the initial suit, echoing the familiar rule that a plaintiff may not "split the cause of action."

In *Swenson v. Swenson*, 313 S.W.2d 770 (Mo.App.1958), a prior action had terminated with a finding that a child had been emancipated by induction into military service, so that the father no longer owed child support. In the later opinion the court said that the mother could not levy execution for installments which had not matured at the time of the modification, because she was concluded by the modification decree.

In *McAllister v. Garrett*, 591 S.W.2d 31 (Mo.App.1979), the first action resulted in a judgment against defendant on a secured note. The opinion simply holds that the defendant could not resist execution process by setting up defenses which could have been, but were not, presented in the initial action.

*State ex rel. Voigts v. City of Pleasant Valley*, 453 S.W.2d 700 (Mo.App.1970), involved a declaratory judgment action necessary to municipal annexations under the Sawyers Act. The court held that the validity of the ensuing judgment could not be attacked in a later suit by another municipality which wanted to annex the same territory. The case has no resemblance to this one.

Here the defendant omitted nothing from its pleading. It brought the stacking question to the attention of the trial court in a post-hearing brief but the trial court did not reach the point. Neither party argued the issue in the briefing of the initial appeal. The court of appeals opinion did not deal with it. Nor did the court of appeals enter a judgment, or direct the entry of a judgment, sufficient to terminate the litigation. The trial court, following remand, had the power to determine all unresolved issues and enter final judgment.

The plaintiff, as well as the defendant, could have asked for express disposition of the stacking point on the initial appeal. He could have included a specific request that "the judgment be reversed and the case remanded with directions to enter judgment for the plaintiff for $200,000." He requested only general relief in suggesting that "the judgment should be reversed." The stacking issue stood as an obstacle to full relief. The plaintiff could have argued that it was without merit. We are confident that the court of appeals would have ruled the point, if so requested in the briefs.

## II. The Merits

■ We turn now to the merits. We distinguish, at the outset, cases such as *Cameron Mutual Insurance Co. v. Madden*, 533 S.W.2d 538 (Mo. banc 1976), and the many cases following its principal holding which deal with the statutorily mandated uninsured motorist coverage and hold that, by reason of the governing statutes,[5] policy provisions prohibiting the aggregation of coverage under multiple policies are invalid and unenforceable. The coverage here involved was not mandated by statute at the time liability arose, and so the parties were free to contract as to limits of coverage. We of course express no opinion

5. Section 379.203, RSMo 1986.

about the effect of the Motor Vehicle Financial Responsibility Law, Ch. 303, RSMo 1986, effective July 1, 1987, on the stacking of liability coverage.

The identical policy language was construed in *Farm Bureau Town and Country Insurance Co. v. Hughes*, 629 S.W.2d 595 (Mo.App.1981), which was cited with approval in *Hempen v. State Farm Mutual Auto Insurance Co.*, 687 S.W.2d 894 (Mo. banc 1985).[6] Those cases hold that the language was sufficient to preclude the stacking of medical benefits under several policies issued by the same insurer. The plaintiff fails to persuade us of a difference between the medical benefit coverage in those cases and the liability coverage in this case. At the time liability arose in this case both kinds of coverage were purely contractual.

The plaintiff argues that the insurer may not now bring up the anti-stacking provision because it initially argued that it never intended to cover Scott as an insured. The argument is hard to follow. The anti-stacking provision is not related in any way to the policy provisions defining the "insured." The finding that Scott is an insured under both policies does not authorize a recovery except in accordance with the valid terms of the policies.

The plaintiff suggests that the anti-stacking clause is "ambiguous." The *Hughes* and *Hempen* cases refute this argument.

The order denying the plaintiff further relief is affirmed.

WELLIVER, HIGGINS, COVINGTON and BILLINGS, JJ., concur.

ROBERTSON and RENDLEN, JJ., concur in result.

---

6. *Cameron Mutual, supra,* permitted stacking of medical coverage absent "language specifically prohibiting such result," which is present here.