IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 5, 2000 Session

## GREGORY DOMINCOVITCH v. WILSON COUNTY BOARD OF ZONING APPEALS

**Appeal from the Chancery Court for Wilson County**
**No. 98429      C. K. Smith, Chancellor**

---

**No. M1999-02334-COA-R3-CV - Filed November 6, 2000**

---

Petitioner/Appellant, Gregory Domincovitch ("Petitioner") made a request to the Wilson County Board of Zoning Appeals for a "use permissible on appeal" to establish a 250 foot communication tower on his A-1 zoned property. Defendant/Appellee, Wilson County Board of Zoning Appeals ("the Board") denied this request. Mr. Domincovitch petitioned for Writ of Certiorari to the chancery court and subsequently filed a Motion for Summary Judgment in that court. The chancellor granted Petitioner's Motion for Summary Judgment finding that the Board did not have jurisdiction to deny the permit for construction of the communications tower. The Board appealed the chancery court's decision. We affirm the chancery court's ruling finding that Petitioner had presented evidence fulfilling all requirements set out in Wilson County's zoning ordinance regarding cell tower location, and thus, the Board had no jurisdiction to deny the permit to Petitioner.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Michael R. Jennings, Lebanon, Tennessee, for the appellants, Wilson County Board of Zoning Appeals.

William E. Farmer, Lebanon, Tennessee, for the appellee, Gregory Domincovitch.

**OPINION**

I.      FACTS PRESENTED BEFORE THE BOARD.

Petitioner applied to the Wilson County Board of Zoning Appeals for a permit to establish a 250 foot communications tower on a 29 acre parcel of property zoned A-1 (agricultural). Utility use, such as the Powertel communications tower, is a "use permissible on appeal" under Wilson County's zoning laws. *See* Wilson County Zoning Ordinance 5.20.03(U). The application was submitted and presented by Powertel, the company proposing to locate the tower on Petitioner's

property. Wilson County has also enacted the following additional regulations regarding cell tower location:

REGARDING CELL TOWER SITE LOCATIONS IN WILSON COUNTY
SEPTEMBER 27, 1996

A.     Applicant shall provide written evidence that they have investigated co-location on an existing tower within one mile of the proposed site. New towers shall not be permitted unless the applicant demonstrates to the reasonable satisfaction of the governing authority that no existing tower or structure can accommodate the applicant's proposed antenna. Evidence to that effect may consist of any of the following:

> 1. No existing towers or structures are located within the geographic area required to meet the applicant's engineering requirements.
>
> 2. Existing towers or structures are not of sufficient height to meet the applicant's engineering requirements.
>
> 3. Existing towers or structures do not have sufficient structural strength to support the applicant's proposed antenna and related equipment.
>
> 4. The applicant's proposed antenna would cause electromagnetic interference with the antenna on the existing tower.
>
> 5. Applicant is unable to work out an acceptable agreement to co-locate.

B.     1.     Applicant shall provide written evidence that any construction or alteration of more than 200 feet in height above the ground level at its site complies with all FAA requirements.

2.     Applicant shall provide written evidence that any construction or alteration of greater height than an imaginary surface extending outward and upward at one of the following slopes meets all applicable FAA requirements.

> a.     100 to 1 for a horizontal distance of 20,000 feet from the nearest point of the nearest runway of each airport in or near Wilson County, excluding heliports.

b. 25 to 1 for a horizontal distance of 5,000 ft. from the nearest point of the nearest landing and take off area of each heliport in or near Wilson County.

C. Applicant shall provide room for vehicle doing maintenance to maneuver on the property.

D. On-site buildings shall only be used for the storage of necessary on-site equipment. Offices shall be prohibited on the same site as a tower, unless permitted on the same site in that zoning district.

At the hearing, Petitioner, through Powertel, submitted evidence that co-location had been investigated, and the only suitable tower within one mile would not provide the necessary coverage of the service area. Powertel also provided a letter from the FAA which stated that the tower would not be a hazard to air traffic safety and provided evidence that the tower met the horizontal distance requirements of the Cell Tower Site Location (B)(2). In addition, Wilson County required a fall radius the same height as the tower and required that the cell tower be the primary use for the property on which it is located. Both of these additional requirements were met by the Domincovitch property and Powertel's proposal.

One of the primary arguments presented before the Board by the tower opponents was regarding a private air strip. Opponents asked that the permit be denied due to the tower's proximity to this airstrip or that the height of the tower be restricted. Evidence was presented that the orientation of the runway was primarily in a north south direction and that the proposed tower would be over 3000 feet to the east of this runway. Thus, the tower would not lie within the approach or landing zone of this air park.

However, opponents to the cell tower presented evidence which attempted to show that this tower would violate FAA regulations governing *public* airports and, thus, posed a danger to the *private* airport. They argued that the Board should be able to regulate the tower to force compliance with the FFA *public* airport guidelines. To combat this argument, additional evidence was presented by Powertel in the form of testimony from an FAA air space consultant. This consultant testified that the FAA does not regulate or protect *private* airports like Fall Creek Air Park. FAA regulations only protect public and military airports and, thus, do not apply to this case. The FAA would only require the tower to be marked and lighted, and Powertel would comply with these requirements.

Both sides seem to think that the issue extant in this case was whether or not the *Board* had the authority to regulate the location of cell towers under Tennessee Code Annotated sections 13-24-301 to -303 (1999). These sections read as follows:

13-24-301. Telephone or telegraph services - Exclusion from local regulation. - No municipal, county or regional planning commission or any municipal or county legislative body shall, by ordinance or otherwise, exclude the location or

-3-

relocation of any facility used to provide telephone or telegraph services to the public.

13-24-302.    Facilities included. - Such facilities include those essential to the provision of telephone and telegraph services such as central office exchanges and microwave towers which require a specific location in order to provide the most efficient service to the public.

13-24-303.    Regulations allowed. - The exclusion of location from local regulation does not preclude the exercise of reasonable municipal and county police powers including, but not limited to, permit requirements, landscaping, off-street parking or set-back lines as an exercise of police powers.

Tenn. Code Ann. §§ 13-24-301 to -303 (1999).

Opponents of the communication tower argued that this statute does not exclude regulation of the location of these towers through use of a county's police powers and that safety of the airport should come under these police powers. They attempted to show, through federal regulations governing *public* airports, that this tower would present a safety hazard to the small *private* airstrip in the vicinity and requested the Board to use its 'police powers' to regulate and, thus, exclude this tower's location. In addition, opponents attempted to argue that regulation of this type of tower was permissible under the theory that the tower was not essential to the provision of telephone service, nor was a specific location required.

Powertel presented evidence of its plan for providing cellular service to Wilson County and how this plan was implemented. Specifically, it showed how the cell towers relayed signals and demonstrated the necessity of towers being located in areas where they could work together to provide the total coverage necessary for optimal cellular service. Powertel showed that in Wilson County it had planned ten tower sites, four of which would be co-located on other cellular towers. Only six of these towers would necessitate new construction. In searching for tower locations they layed out specific areas known as search rings within which each tower would need to be located to provide the cellular coverage. The areas in which towers could be located were further limited by Wilson County's fall radius and principle use requirements.

At the end of this hearing, the Board disapproved Petitioner's request for a permit to build this communications tower on his property. The reason for disapproving this request was "based on the safety of that airport or that airstrip." No other findings were made by the board on which a denial of the permit was based.

II.    HEARING BEFORE THE CHANCERY COURT.

After denial of his request, Mr. Domincovitch petitioned the chancery court for Writ of Certiorari to review the ruling of the Board. After this writ was filed, Petitioner filed a Motion for

Summary Judgment.  Attached to the Motion was additional evidence not presented at the hearing in front of the Board.  This evidence consisted of responses to requests for admissions submitted to Rick Gregory and the Wilson County Board of Zoning Appeals, answers to interrogatories submitted to Rick Gregory, an affidavit of Gregory Domincovitch, and numerous other documents attached to Mr. Domincovitch's affidavit.

After hearing the Motion for Summary Judgment, the chancery court held as follows:

5.      The Court further found that on September 27, 1996 Wilson County adopted certain regulations regarding cell tower site locations.

6.      Furthermore, the Court found that the proposed communications tower to be placed on the property of Gregory Domincovitch did not violate Wilson County regulations governing location of cellular telephone towers.

7.      In addition, the Court found that the private airstrip is a runway which runs north and south, and since the tower is located over 3,000 feet east of the runway, the tower would not in anyway violate the cell tower site location regulations of Wilson County.

8.      The Court failed to find the proposed cellular telephone tower to be in violation of any of the police powers that have been adopted by Wilson County.

9.      Therefore, it is the finding of the Chancery Court, pursuant to the provisions of T.C.A. Sec. 13-24-301, that the Wilson County Board of Zoning Appeals was without authority to exclude the location of the proposed cellular telephone tower.

10.     Accordingly, the Chancery Court found that on August 28, 1998 the Wilson County Board of Zoning Appeals acted without proper jurisdiction in failing to grant the use for permission on appeal which was sought by the Petitioner.

11.     The Court granted the Motion for Summary Judgment filed by the Petitioner, and reversed the decision of the Wilson County Board of Zoning Appeals.

12.     The Court directed the Wilson County Board of Zoning appeals to issue and grant the application for use on appeal, and to grant the required building permit for the communications tower.

Our review of the chancery court's grant of Petitioner's Motion for Summary Judgment is *de novo* upon the record without a presumption of correctness presenting only a question of law. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). Upon this review of the record, we find that the chancery court correctly granted Petitioner's Motion for Summary Judgment finding there was no genuine issue of material fact as to the Board's lack of jurisdiction in this matter. The Board of Zoning Appeals is merely an administrative body which derives its authority from section 13-7-109 of the Code. Thus, the Board may only determine whether or not Petitioner has complied with all applicable zoning laws. As the Board made no finding that Petitioner failed to comply with the A-1 zoning laws and Cell Tower Cite Location rules, they have no authority to deny Petitioner permission to construct the tower.

III.     APPLICABLE LAW.

The power of the Board of Zoning Appeals over cell tower location is not governed by sections 13-24-301 to -303 of the Code. These sections govern the power of a legislative body, and the Board is not a legislative body. Instead, the Board is bound to the administrative function bestowed on it by Tennessee Code Annotated section 13-7-109 (1999).

A zoning ordinance is a proper and valid exercise of a county or municipality's police power so long as it is reasonably related to the protection of the public safety, health, morals, or welfare. *Shatz v. Phillips*, 225 Tenn. 519, 471 S.W.2d 944, 947-48 (1971). However, the ability to use these police powers to legislate, and thus enact or amend zoning laws, is not vested in the Board of Zoning Appeals but in a county or municipality's legislative body. We must differentiate between a legislative and an adjudicative act. "An example of an administrative or adjudicative proceeding in a zoning matter is found where a *board* is established to hear and decide appeals relative to the application of zoning provisions to individual circumstances. But *boards of this nature are not legislative bodies*." *Fisher v. City of Knoxville*, 584 S.W.2d 659, 661 (Tenn. Ct. App. 1979). (emphasis added). Thus, all the Board can do is determine whether the use requested complies with all current zoning laws of Wilson County.

The power of the Board of Zoning Appeals is further explained in the case of *Father Ryan High School, Inc. v. City of Oak Hill*, 774 S.W.2d 148 (Tenn. Ct. App. 1998). In *Father Ryan*, the Board of Zoning Appeals heard a request for a conditional use permit to construct a private high school. This request was denied based on the consideration of the health, safety and morals of the community and lack of sufficient parking for the facility. This zoning ordinance in *Father Ryan* provided that the Board could "[p]ermit a private school to be established or operated upon a determination that the establishment or operation of such school is consistent with the general welfare, safety, morals and health of the community, after taking into consideration the letter and the spirit of this ordinance." *Father Ryan*, 774 S.W.2d at 187.

This Court held that the Board in *Father Ryan* exceeded the jurisdiction conferred on it by the Code. Further, the city legislative body had set out specific requirements in their zoning regulations for conditional uses such as the one requested by Father Ryan High School. Boards of

zoning appeals were established pursuant to Code sections 13-7-109 and 13-7-207 to hear appeals regarding these special exceptions, or conditional use permits, under the applicable zoning ordinance.[1] "The legislature, in providing for the establishment of a board of zoning appeals, did not confer this authority upon such boards under the enabling legislation, the exercise of which would be legislative, as opposed to the quasi-judicial authority vested in the boards of zoning appeals." *Id.* at 188-189.

The *Father Ryan* court found that the jurisdiction and power of a board of zoning appeals was specifically set out in section 13-7-207 of the Code; however, Wilson County's authority will be derived from its virtual twin, section 13-7-109:

> 13-7-109. Powers of board of appeals. - The board of appeals has the power to:
>
> (1) Hear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, permit, decision, or refusal made by the county building commissioner or any other administrative official in the carrying out or enforcement of any ordinance enacted pursuant to this part;
>
> (2) Hear and decide, in accordance with the provisions of any such ordinance, requests for special exceptions or for interpretation of the map or for decisions upon other special questions upon which such board is authorized by any such ordinance to pass; and
>
> (3) Where, by reason of exceptional narrowness, shallowness or shape of a specific piece of property at the time of the enactment of the regulation or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under such section would result in peculiar and exceptional practical difficulties to or exception or undue hardship upon the owner of such property, authorize, upon an appeal relating to the property, a variance from such strict application so as to relieve such difficulties or hardship; provided, such relief may be granted without substantial detriment to the public good and without

---

[1] Although *Father Ryan* cites Code section 13-7-207, the Wilson County Board of Zoning Appeals derives its authority from section 13-7-109. The wording of these sections are virtually identical with regard to a board's power, the only difference being that section 13-7-207 grants power to municipal boards and section 13-7-109 grants power to county boards.

> substantially impairing the intent and purpose of the zone plan and
> zoning ordinance.

Tenn. Code Ann. § 13-7-109 (1999).

Thus, when the legislature provided for the establishment of a board of zoning appeals, this enabling legislation did not provide for the exercise of legislative power but restricted that power to quasi-judicial or administrative. *Father* Ryan, 774 S.W.2d at 188-89. This Court went on in *Father Ryan* to state:

> It is settled law that a board of zoning appeals' power or jurisdiction is limited in scope to that expressly conferred by statute.
>
> . . . .
>
> A municipality may not confer powers upon the board not granted by the enabling statute and such grant is *ultra virus* and void.
>
> . . . .
>
> In the instant case, the board's action in denying the permit was based upon considerations beyond its statutory power and was therefore illegal.

*Father Ryan,* 774 S.W.2d at 190-91 (citations omitted); *see also Merritt v. Wilson County Bd. of Zoning Appeals*, 656 S.W.2d 846 (Tenn. Ct. App. 1983); *Harrell v. Hamblen County Quarterly Ct.*, 526 S.W.2d 505 (Tenn. Ct. App. 1975); *Brooks v. Fisher*, 705 S.W.2d 135 (Tenn. Ct. App. 1985). Such is the situation before us today.

One of the cases relied on in *Father Ryan* is *Merritt v. Wilson County Bd. of Zoning Appeals.* As in the case at bar, the Wilson County Board of Zoning Appeals, in *Merritt*, denied a "use permissible on appeal." Also, as in this case, the Board in *Merritt* made no finding that the project failed to comply with any zoning ordinance requirements. Instead they denied the building permit "due to lack of proper ingres/egress to accommodate a 250-unit apartment complex." *Merritt*, 656 S.W.2d at 853.

On appeal, this Court stated that "[t]he Board of Zoning Appeals has neither the power to zone nor to amend the zoning ordinance. That power is in the county legislative body. T.C.A. §§ 13-7-101 and 13-7-105." *Id.* at 854. This Court further stated that "the Wilson County Zoning Ordinance sets forth comprehensive requirements for a group housing development" and the "property met all requirements. . . . [T]he Board did not deny the application because of failure to meet the requirements of the ordinance." *Id.*

Those opposed to the housing development made an argument similar to the one in this case, "that even though the Merritts' property may have met all the specific criteria for a Group Housing Development, the Board can deny an application under the purpose clause of the Wilson County Zoning Ordinance because the general welfare could be effected if the permit were granted." *Id.* The Court specifically disagreed with this argument, even where an action of the Planning

Commission or the quarterly court was involved rather than a Board of Zoning Appeals. Said the court quoting from *Harrell v. Hamblin Co. Quarterly Court*:

> It is obvious that the Planning Commission and the Quarterly Court denied the permit to the Petitioners because of the objection of adjacent property owners, which they were without authority to do. 101 C.J.S. Zoning, § 224.
>
> Although these adjacent property owners may be justifiably concerned as to the adverse effect that may be had on the value of their property, this does not permit an *administrative agency* to deny an adjoining property owner the right to use his property for lawful purposes and not in violation of zoning or restrictions.
>
> > "The grant or refusal of a permit is to a certain extent within the sound discretion of the board or official authorized to use it, but the discretion must be exercised reasonably, and if an applicant meets all of the requirements of the zoning regulations and there is no valid ground for denial of the application, the permit should be issued." 101 C.J.S., *supra*.
>
> The Law of Zoning and Planning Chapter 55, Section 3, says:
>
> > "So long as the application is in order and the proposed use of the property complies with applicable municipal ordinances or, where although not complying, the premises has a vested non-conforming status, the applicant is entitled to a permit, and it is the duty of the administrative officer to issue him one."

*Merritt*, 656 S.W.2d at 855 (quoting *Harrell*, 526 S.W.2d at 508 - 509).

The most recent case decided by this Court challenging a decision of a board of zoning appeals also concerns a Wilson County Board of Zoning Appeals' denial of a "use permissible on appeal." After reviewing Wilson County zoning ordinances and the applicable law, this Court found that the use requested was clearly specified as a "use permissible on appeal" and that "once the applicant goes through the process and the requested use satisfies all other pertinent regulations of the local zoning ordinance, it must be granted." *Wilson County Youth Emergency Shelter v. Wilson County*, 13 S.W.3d 338, 342 (Tenn. Ct. App. 1999). This Court found no evidence that the application violated any part of the Wilson County A-1 zoning regulation and stated that "[w]hile the [board] has authority to act under the zoning regulations, it must act 'within existing standards and guidelines.' It clearly does not have unbridled authority to deny an otherwise fully-compliant request simply because other citizens are opposed to the use." *Wilson County*, 13 S.W.3d at 343.

The proper method of review of a decision made by a board of zoning appeals is through a common law writ of certiorari. *McCallen v. City of Memphis*, 786 S.W.2d 633 (Tenn. 1990). Under this writ, the reviewing court must examine two things, (1) was the action of the tribunal illegal or in excess of its jurisdiction, if not, (2) was there material evidence to support the decision. *See McCallen*, 786 S.W.2d at 638-640; *Massey v. Shelby County Retirement Bd.*, 813 S.W.2d 462 at 464-465 (Tenn. Ct. App. 1991); *Hemontolor v. Wilson County Bd. of Zoning Appeals*, 883 S.W.2d 613, 616-618 (Tenn. Ct. App. 1994); *Hoover, Inc. v. Metro Bd. of Zoning Appeals*, 924 S.W.2d 900, 904-905 (Tenn. Ct. App. 1996).

"In determining the question of whether new evidence may be introduced before the reviewing court in a proceeding under the common-law writ, a distinction must be drawn between the different types of legal questions which may be presented." *Massey*, 813 S.W.2d at 465. First, in determining whether a lower tribunal exceeded its jurisdiction or in some manner acted illegally, arbitrarily or capriciously, additional evidence may be received by the reviewing court. This is "because the reviewing court determines such issues as an original matter." *Id.*

However in dealing with the sufficiency of the evidence to uphold the decision of a board, no additional evidence may be introduced.

The situation is different, however, where the legal issue before the court is the sufficiency of the evidence to support an administrative fact-finding. On this issue no new evidence is admissible. The reviewing court is confined to the record as it existed before the lower fact-finding tribunal.

. . . [T]he reviewing court is limited to asking whether there was in the record before the fact-finding body *any* evidence of a material or substantial nature from which that body *could* have, *by reasoning from that evidence*, arrived at the conclusion of fact which is being reviewed.

*Id.* (emphasis in original).

This Court reiterated these two areas of review under common law writ of certiorari in *Hemontolor v. Wilson County Bd. of Zoning Appeals*. "Our scope of review, and that of the trial court, under a common law writ of certiorari, is to determine whether the board exceeded its jurisdiction, followed unlawful procedures, acted arbitrarily or capriciously or acted without material evidence to support its decision." *Hemontolor*, 883 S.W.2d at 616. "The question of whether or not there is any material evidence to support the Board's decision is one of law, to be decided by the reviewing court upon an examination of the evidence introduced before the Board." *Id.* at 617. "Courts have limited the introduction of additional evidence to the question of whether the Board exceeded its jurisdiction or acted illegally, arbitrarily or capriciously." *Id.* at 618.

One other case pertinent to review of the issues before the Court is *Simmons v. City of Lexington*, 11 S.W.3d 136 (Tenn. Ct. App. 1999). In *Simmons*, land owners filed an injunction

which the chancellor treated as a writ of certiorari to the board of zoning appeals. The chancellor entered summary judgment in favor of the land owners on that writ of certiorari. Although the Court of Appeals reversed the trial court's grant of the motion for summary judgment, it did not find that a motion for summary judgment was an improper procedure for a case being heard on a common law writ of certiorari from a board of zoning appeals.

IV.     ISSUES PRESENTED FOR REVIEW

1. Did the trial court err in deciding the matter on summary judgment?

The court's determination to decide this matter on summary judgment was not incorrect, nor was the court's decision to allow in additional evidence along with the summary judgment motion. The chancellor's ruling was that the board *lacked jurisdiction* to exclude the communications tower "based on safety of the airport." As new evidence may be introduced on appeal regarding the issue of *whether the board exceeded its jurisdiction*, *Massey*, 813 S.W.2d at 465, it was appropriate for the court to allow the introduction of new evidence on this issue. In addition, summary judgment is appropriate on the issues of the illegality of the Board's actions and the jurisdiction of the Board since "the reviewing court determines such issues as an original matter. On such an issue the reviewing court weighs the evidence before it and determines by preponderance of the proof whether the lower tribunal acted illegally or not." *Id.*

As previously seen in *Simmons*, this court has not determined that summary judgment is an improper procedure unavailable on appeal through a writ of certiorari. Thus, we hold today that in situations where the court has original jurisdiction over a matter, and is not bound to review only the record below, summary judgment is appropriate. The lower court's decision to proceed on the summary judgment motion is upheld.

With regard to the evidence introduced at the chancery court level, and upon review of this evidence, it is obvious that much of the evidence did not relate to the issue of whether the board acted illegally or outside its jurisdiction. The majority of this evidence was merely additional evidence to show that the Board's decision was incorrect. Although much of this evidence should not have been allowed in, its introduction was harmless error, as the chancellor never considered the sufficiency of the evidence presented to the Board. The chancellor decided this case on the Board's lack of jurisdiction, thus any evidence designed to bolster or discredit the evidence presented to the Board was not relied on by the chancellor in making his determination.

2. Did the court err in finding that the Wilson County Board of Zoning Appeals acted without jurisdiction in denying the application for use on appeal?

Based on case law dealing with the powers of a board of zoning appeals, we find that the chancellor was correct in determining that the Wilson County Board of Zoning Appeals had no jurisdiction to deny the permit application for construction of a communications tower. This application was not denied based on failure to comply with the requirements of the zoning ordinance.

The application was denied because of "safety to the airport". Those zoning ordinances in Wilson County applicable to tower location contained no provisions for airport safety other than the FAA approval and the horizontal distance requirements. Therefore, as the Board's jurisdiction is limited to determinations expressly conferred by statute, *Father Ryan High School*, 747 S.W.2d at 184, the board has no authority to require additional conditions not set forth in the zoning ordinances applicable to this case. Thus, the board "exceeded its own statutory authority" and was without jurisdiction to decide the matter based on airport safety. *Massey*, 813 S.W.2d 462; *Merritt*, 656 S.W.2d 846; *Wilson County Youth Emergency Shelter*, 13 S.W.3d 338.

3. Did the court err in reversing the decision of the Wilson County Board of Appeals and ordering the board to grant the application for use on appeal?

The Board acted outside its jurisdiction when it denied the permit based on "airport safety" and also gave no other reason for this denial. Since, after the board heard all the evidence presented in this case, it found no violation of any zoning ordinance which would give the board valid grounds to deny the permit, it must now grant Petitioner this permit. "Having shown that the use is allowable, there is no burden on the petitioner to show that the use would not damage the health, safety and morals of the community." *Merritt*, 656 S.W.2d at 854. "If an applicant meets all of the requirements of the zoning regulations, and there is no valid ground for denial of the application, the permit should be issued." *Id.* at 855.

We agree with the chancery court that Petitioners met all requirements of the Wilson County Zoning Ordinance and that no evidence was presented which showed this communication tower would violate any part or provision of the A-1 zoning regulation or Wilson County's Cell Tower Location regulations. We, thus, affirm the trial court's order directing the board to approve Petitioner's request and allow construction of the communications tower. *See Wilson County Youth Emergency Shelter*, 13 S.W.3d at 343.

4. Do the provisions of the Tennessee Code Annotated section 13-24-301, et seq. exclude the Wilson County Board of Zoning Appeals from having any jurisdiction over the regulation of location of facilities used to provide telephone or telegraph services to the public?

As the Board of Zoning Appeals is merely an administrative body, it has no power to "regulate" under section 13-24-301, or any other section, of the Code. This statute specifically applies to "legislative bodies," of which the Board of Zoning Appeals is not one. Under Tennessee Code Annotated section 13-7-109 and subsequent interpreting case law, the board of zoning appeals is a quasi-judicial tribunal. *See Father Ryan High School*, 774 S.W.2d at 188. The board has neither the power to zone nor to amend a zoning ordinance. *Merritt*, 656 S.W.2d at 854. Thus, we affirm the chancellor's determination that the Wilson County Board of Zoning Appeals lacks jurisdiction to regulate local facilities that provide telephone or telegraph service to the public.

5. Was there material evidence to support the decision of the Wilson County Board of Zoning Appeals in this matter?

As the chancellor did not need to decide the appeal on the basis of material evidence, we find this question moot. In its analysis, the chancery court determined that the only basis given by the Board for denying the use permit was one that exceeded the jurisdiction of the Board; thus, the issue of sufficiency of the evidence in front of the Board was never reached. Regardless of the sufficiency of the evidence regarding airport safety, the Board had no jurisdiction to make the decision that airport safety should determine Petitioner's right to an otherwise legal use. As we affirm the chancellor's determination to decide this case on the Board's lack of jurisdiction, we find it unnecessary to address the issue of sufficiency of the evidence before the Board.

## V. PETITIONER'S REQUEST FOR ATTORNEY FEES

Petitioner has made a request for attorney fees under Tennessee's Equal Access to Justice Act, Tennessee Code Annotated section 29-37-101 to -106. However, Petitioner failed to introduce any evidence that he met the requirements of a "small business" laid out in section 29-37-103(2). Thus, the trial court's determination not to award litigation costs and attorney fees in this matter is affirmed.

## VI. CONCLUSION

The Wilson County Board of Zoning Appeals is an administrative or quasi-judicial body empowered only under section 13-7-109 of the Code. Thus, the Board can only make judicial determinations of whether or not an applicant complied with existing zoning laws. In this case, the Board refused Applicant's building permit for a reason which was not included in any Wilson County Zoning law, to wit safety of a private airport. Thus, the Board exceeded its jurisdiction in this matter.

As the issue of the Board's jurisdiction is an original matter heard by the chancellor, we agree with the chancellor's decision to allow in additional evidence and dispose of the matter on summary judgment. Any evidence not related to the Board's jurisdiction should not have been allowed in, but the error was harmless.

The Board must now grant Petitioner's request to build the communications tower. We agree with the chancellor that the Board failed to find the tower to be in violation of any Wilson County Zoning laws, so the use must be granted.

Finally, Petitioner failed to present any evidence that he was a "small business" as defined by Tennessee's Equal Access to Justice Act. The request for attorney fees and litigation costs were, therefore, properly denied.

The decision of the chancery court is affirmed.

_____
WILLIAM B. CAIN, JUDGE

-13-